IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 27, 2009

## STATE OF TENNESSEE v. JAMES PAUL KINARD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-A-274d     Cheryl Blackburn, Judge**

-----

**No. M2008-02840-CCA-R3-CD - Filed May 28, 2010**

-----

The defendant, James Paul Kinard, was convicted of three counts of rape of a child, a Class A felony, and one count of aggravated sexual battery, a Class B felony. He was sentenced to twenty-five years for each Class A felony conviction and twelve years for the Class B felony conviction. The sentences for the Class A felonies were ordered to be served consecutively, and the sentence for the Class B felony was to be served concurrently for an effective seventy-five-year sentence. On appeal, the defendant argues that: the evidence was insufficient to support his convictions; the trial court abused its discretion in finding that the victim's prior allegations of abuse were inadmissible; and the defendant was sentenced improperly. After careful review, we affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Dawn Deaner, District Public Defender; and Emma Rae Tennent (on appeal) and J. Michael Engle (at trial), Assistant Public Defenders, for the appellant, James Paul Kinard.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn and Kristen Menke, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant was convicted of committing several sexual crimes against the four-year-old victim, his wife's niece. The victim's aunt, Belinda Henley, testified that the

defendant was married to her sister, Tonya Kinard. She testified that they helped care for the victim and her siblings. She said that she and her sister alternated taking care of the children because the victim's grandmother was sick.

Ms. Henley testified that in April 2007, the victim did not want to stay with the defendant. She recalled that the child acted like she was terrified to go to the defendant's home. Based on statements the victim made to her, Ms. Henley phoned a Department of Children's Services 1-800 number for child abuse to make a report. She testified that the victim wore panties but also wore "pullups" throughout the day and a lot at night because she was "having a lot of accidents."

During cross-examination, Ms. Henley testified that she maintained contact with the victim. She also said that she had previously caught the victim telling lies. She characterized them as being told to get the victim out of trouble. She said that the victim asked about the defendant and said that she wanted to see and talk to him.

The victim testified that she was six years old and in the first grade in school. Following a series of questions from the trial judge, the witness demonstrated that she understood the truth and agreed to tell the truth. The victim said that she lived with her "papa" and her siblings. When shown a photograph of a female body, the victim indicated places that nobody should touch, including her mouth and her "privates." She was also shown a photograph of a male body and indicated places that nobody should touch, including his mouth and "private." She identified the defendant as a person that had touched her privates. She testified that the defendant touched her privates with his hand and his privates. She also said he touched her mouth with his private and that the defendant put his private inside her mouth. The victim testified that something "yellow" came out of his private and that it tasted "nasty." Finally, she testified that the defendant made her touch his private with her hand. She said that she told the defendant that she did not want to touch him in these ways and that he told her if she told anybody he would kill her entire family.

The victim testified that the incidents occurred while her aunt was at work. She said that her aunt, the defendant's wife, worked in the office of the hotel where they lived.

Detective David Zoccola testified that he was a thirty-one-year veteran of the police department and that he had ten years of experience in the sexual abuse unit. He said he interviewed the defendant at a hotel on Murfreesboro Road. The defendant's wife was also present when they arrived at the hotel. The interview was conducted in the police car for privacy purposes. He testified that he sat behind the wheel, the defendant sat in the passenger seat, and another detective sat in the backseat. The other detective made an audio recording of the interview. The defendant was not aware that the interview was being

recorded. The other detective was with him because he was being trained and had been with the department only six or seven weeks. There was a problem with the recording, which caused them to lose several minutes of the interview.

The detective testified that the defendant was aware of the allegations against him because a family member had brought it to his attention. He said the defendant said there was a family member upset with him because he was not willing to pay an electric bill and prevent the family member's utilities from being shut off. The defendant said the allegations were in retaliation for the electricity being cut off. The detective testified that he brought the victim to court because none of her family members were willing to bring her to court. The defendant acknowledged that he had applied medication to the victim's vaginal and anal areas and said that his wife also had applied medication to those areas.

During cross-examination, the detective testified that he did not attend the victim's forensic interview. He had not spoken to the victim when he interviewed the defendant. The detective said that he told the defendant that the victim had been given a medical examination when, in fact, she had not been examined. He acknowledged that telling the defendant there had been an examination was part of a learned technique that medical evidence might exist. The detective was aware that there was no medical evidence at the time. The detective also acknowledged that he set out a "what if" for the defendant involving medical results from the Tennessee Bureau of Investigation (TBI), although nothing was ever sent to the TBI for examination.

Sue Ross, a pediatric nurse practitioner with Our Kids Center in Nashville, testified that she specialized in conducting medical evaluations on children who are alleged to be victims of sexual abuse. She testified that a social worker interviewed the victim and the victim's grandmother and received information consistent with the referral they received from the Department of Children's Services. In July of 2007, she performed a "head-to-toe" examination of the victim, including an anogenital examination which involves a magnification of the area to be observed to see that everything is normal. The victim's examination was normal and indicated no chronic or lasting injury to her genitalia. She testified that it is typical to have normal examinations with children; therefore, the examination does not provide an answer as to whether sexual abuse occurred.

Tonya Kinard, the defendant's wife and aunt of the victim, testified that she had been married to the defendant for seven years. She said that she had little contact with the victim when she was born because there was conflict between the victim's mother and herself. She took a more active role in the victim's life when she reached the ages of three and four, and she saw the victim once or twice a month and on holidays. She and the defendant moved to Nashville in 2006, and they began to share in care giving duties for the victim and her

siblings.  She testified that she and her husband were both employed at the same hotel on Murfreesboro Road.  She said that she was an assistant manager in the office of the hotel but, at the time of the allegations, she worked part-time at the hotel's front desk.  The defendant, who was a full-time employee at the hotel, also worked at the front desk.

The defendant's wife testified that they lived in a standard room at the hotel with a single king bed in it.  Her boss lived in a house that was attached to the hotel and located directly behind the hotel office.  She testified that the victim and her siblings spent every other weekend with her at the hotel.  The children often went to the office with her because her boss had a young son who was a playmate of the children.  She said that the victim would not have been left alone with the defendant.  She testified that she did not allow the girls to be alone with men because she was raped by her grandfather as a child.  She testified that there was never a time when the victim would have been alone with the defendant.  She did not have any direct contact with the victim following the defendant's arrest.  She acknowledged that she had provided support to the victim's father, who was the custodial parent of the children, to assist in paying bills and providing for the children's needs.  The defendant's wife testified that she had not tried to discuss the case with the victim.  She said she had caught the victim in a number of lies.  During cross-examination, the defendant's wife testified that she trusted her husband with the children because he had given her no reason not to trust him.

The defendant was convicted of three counts of rape of a child and sentenced to twenty-five years on each count, to be served consecutively.  He was also convicted of one count of aggravated sexual battery, for which he was sentenced to twelve years.  The aggravated sexual battery conviction was ordered to be served concurrently with the rape convictions, for an effective seventy-five-year sentence.

Analysis

On appeal, the defendant argues that:  the evidence at trial was insufficient to support his convictions; the trial court abused its discretion in excluding evidence about the victim's prior allegations of abuse; and he was sentenced improperly.

First, the defendant argues that the evidence was insufficient to support three convictions of rape of a child and a single conviction of aggravated sexual battery.  Specifically, he contends that the victim's testimony lacked sufficient clarity and reliability to sustain his convictions.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the

finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

Tennessee Code Annotated section 39-13-522(a) defines the offense of rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tennessee Code Annotated section 39-13-504 defines aggravated sexual battery, in pertinent part, as unlawful sexual contact with a victim less than thirteen years of age.

At trial, one of the victim's aunts testified that the victim appeared "terrified" of staying with the defendant. The victim testified that the defendant touched her private on the inside with both his private and his hand. She also testified that his private touched her inside her mouth and that something came out of his private that tasted "nasty." She said the defendant touched her back private with his hand. The victim testified that the defendant held her hand to his private and moved it. The forensic nurse testified that the victim's statements were consistent with the initial allegations of abuse.

In *State v. Elkins*, the Tennessee Supreme Court previously determined that a child rape victim's testimony can provide sufficient evidence to support convictions for rape of a child. 102 S.W.3d 578, 582 (Tenn. 2003). The defendant in *Elkins* argued that the jury erred in accrediting the testimony of the victim. Here, as in *Elkins*, the jury chose to believe the testimony of the victim over witnesses for the defense. A jury's verdict will not be overturned unless there are inaccuracies or inconsistencies that are so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

The defendant points to several things to support his argument, including his denial to the police during his initial interview despite being faced with an allegation by the police that there might be medical evidence to support the victim's claim. The defendant also argues that the lack of physical evidence, specifically that the victim's examination was normal in every respect, supports his claim. The defendant also argues that the victim's testimony was not clear and specifically contends that the victim might have meant that the defendant touched her inside her clothes rather than inside her body. The record reflects that the victim's testimony matches her previous accounts of the sexual abuse at the hands of the defendant. She testified to three separate instances of penetration: one penile penetration of her vagina, one penile penetration of her mouth, and one digital penetration of her vagina. She also testified that the defendant made her touch his penis to masturbate him. The victim's testimony was consistent with her initial allegations and her statements to the social worker. There were no inconsistencies in the victim's statements. The defendant argues that the victim's statements lacked clarity and that there was no medical evidence presented by the nurse practitioner. However, the jury accredited the testimony of the victim over the testimony of the defendant's wife. The defendant has failed to demonstrate that an inconsistency exists sufficient to create a reasonable doubt of his guilt.

Next, the defendant argues that the trial court erred in excluding the victim's prior allegations of abuse because they were a separate potential source of the victim's knowledge about sexual activity. The trial court determined that the proffered evidence did not show a potential source of the victim's extensive sexual knowledge where she had previously alleged that her mother's boyfriend touched her vagina on top of her clothes.

A trial court's ruling on the relevancy of evidence may only be disturbed upon a showing of an abuse of discretion. *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)). The trial court's exercise of discretion may not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Once the court concludes the evidence is relevant, it should exclude the evidence if its probative value is substantially outweighed by its prejudicial effect. Tenn. R. Evid. 403; *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). A trial court's decision as to the relevance of evidence under Rule 401 will be reversed only upon a showing of abuse of discretion. *State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003).

The Tennessee Rules of Evidence specifically address the admission of evidence of a victim's sexual behavior. Tennessee Rule of Evidence 412(c) states in pertinent part that evidence of specific instances of a victim's sexual behavior is inadmissible unless the evidence is required by the United States or Tennessee Constitution or offered by the defendant on the issue of credibility of the victim; if the sexual behavior was with the accused on the issue of consent; if the sexual behavior was with persons other than the accused for the purpose of explaining scientific or medical evidence; to prove or explain the source of semen, injury, disease, or knowledge of sexual matters; or to prove consent. Tenn. R. Evid. 412(c). The trial court must also conclude that the probative value of the evidence outweighs the unfair prejudice to the victim. Tenn. R. Evid. 412(d)(4).

At trial, the defendant sought to question the investigating detective about allegations of another man assaulting the victim. An audio recording was made of the defendant's interview with police and, in the defendant's statement, he told the police about a man he barred from the home because of allegations of child abuse made by the victim. Counsel for the defendant attempted to ask the detective if he had followed up on this information as part of his investigation, and the State raised an objection. The trial court conducted a jury out hearing to decide if the defense could inquire about the previous allegations and ultimately decided to exclude the information.

The defendant then made an offer of proof that included a collection of Department of Children's Services records obtained through discovery. Included in these records are notes from a forensic interview in which the victim told the interviewer that her mother's boyfriend and another man, not the defendant, had touched her "kitty cat." The same interviewer conducted the victim's forensic interview in the underlying case. The defendant also made an offer of proof that the defendant's aunt, Belinda Henley, who testified at trial, overheard the victim telling her grandmother that her mother's boyfriend had touched her inappropriately. Counsel for the defendant told the trial court that he intended for this evidence to demonstrate that the victim's knowledge of sexual matters did not result solely from the allegations of abuse by the defendant. The trial court ruled that the proffered evidence fell under the scope of Tennessee Rule of Evidence 412 and that, ultimately, the probative value of the evidence did not outweigh the danger of unfair prejudice to the victim.

On appeal, the defendant argues that he should have been permitted to question witnesses about the victim's prior allegations of sexual abuse. Specifically, he contends that the evidence in question does not come under the purview of Tennessee Rule of Evidence 412 because he was not offering the evidence to establish that the allegations were true. He sought to introduce evidence that the victim had made allegations that other men had sexually assaulted her and that she was aware of sex from another source. He argues that the trial court's denial of his right to present this evidence constituted a denial of his due process right to present a defense.

The trial court ruled that the evidence offered by the defendant, even if true, did not show another source for the victim's sexual knowledge. The prior allegations included touching of the victim on top of her clothing by other persons. Here, the victim described the defendant's penis, the secretion of fluid, masturbation, vaginal penetration, and oral sexual activity. The trial court properly excluded the victim's prior abuse allegations because they did not provide a basis for the victim's sexual knowledge because the other allegations were not related to the underlying offenses.

Next, the defendant argues that he was improperly sentenced to the maximum for each of his convictions and that consecutive sentencing for his Class A felony convictions was improper. This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. T.C.A. § 40-35-401(d) (2006). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997).

The trial court is free to select any sentence within the applicable sentencing range so long as the length of the sentence is "consistent with the purposes and principles of the Sentencing Act." T.C.A. § 40-35-210(d) (2006). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," *id*. § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," *id*. § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," *id*. § 40-35-103(5). Pursuant to Tennessee Code Annotated section 40-35-210(b), the trial court is required to consider the following when sentencing a defendant:

(1)     The evidence, if any, received at the trial and the sentencing hearing;
(2)     The presentence report;
(3)     The principles of sentencing and arguments as to sentencing alternatives;

(4)     The nature and characteristics of the criminal conduct involved;

(5)     Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6)     Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7)     Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

*State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008).

The defendant argues that the trial court improperly applied two enhancement factors. The revised Tennessee Code Annotated § 40-35-210 requires the trial court to "place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." T.C.A. § 40-35-210(e). The trial court is now granted more discretion in imposing a sentencing term because the mitigating and enhancement factors are now considered merely advisory. Here, the trial court considered the following enhancement factors pursuant to Tennessee Code Annotated section 40-35-114:

(1)     The defendant has a previous history of criminal convictions or criminal behavior;

(4)     A victim of the offense was particularly vulnerable because of age or physical or mental disability;

(14)    The defendant abused a position of public or private trust.

T.C.A. § 40-35-114(1), (4), and (14) (2006).

The trial court stated that the most weight was placed on the enhancement factor for having a prior conviction involving another child in a sexual offense. In 2001, the defendant was convicted in South Carolina of assault and battery of a high and aggravated nature which involved abuse of a child under the age of six. The trial court then sentenced the defendant to twenty-five years on each of the three Class A felony convictions and to twelve years for the Class B felony conviction, all the maximum in the range. Because the trial court placed the most weight on the defendant's prior child abuse conviction, the trial court was within its discretion in setting the defendant's sentence. The presence of a prior conviction similar in nature to the underlying conviction was sufficient for the trial court to set the sentence at the maximum in the range.

Next, the defendant argues that the trial court erred in ordering that the sentences for his Class A felony convictions be served consecutively. A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(1)     [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2)     [t]he defendant is an offender whose record of criminal activity is extensive;

(3)     [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)     [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)     [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     [t]he defendant is sentenced for an offense committed while on probation; or

(7)     [t]he defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b) (2006); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). Furthermore, in the event the trial court finds the defendant is a "dangerous offender," it must also determine whether the consecutive sentences: (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

In ordering consecutive sentences, the trial court found that the defendant had been convicted of four statutory offenses against a child four years of age. The trial court found that the activity was undetected until the victim exhibited terror that she would have to go to the defendant's home. The trial court held that Tennessee Code Annotated section 40-35-115(b)(5) was applicable and supported the application of consecutive sentencing. As previously stated, the applicable section allows the trial court to impose consecutive sentencing when it finds by a preponderance of the evidence that the defendant is convicted

of two or more counts of sexual abuse of a minor.  The statute allows the sentencing court to consider the circumstances of the relationship of the defendant and victim.  Here, the defendant was an uncle and a frequent caretaker of the victim.  His abuse of the victim caused the victim to be terrified of going to the defendant's residence.  Also, the activity encompassed almost all possible variations of abuse including digital penetration, penile penetration, and forced fellatio to the point of ejaculation.  The trial court properly applied this factor and was within its discretion in ordering consecutive sentences.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____

JOHN EVERETT WILLIAMS, JUDGE